**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JULIE A. KEENE-STEVENS;
RITCHIE N. STEVENS,

*Petitioners-Appellees*,

v.

COMMISSIONER OF INTERNAL
REVENUE,

*Respondent-Appellant*.

No. 21-71082

Tax Ct. No.
9539-15

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted April 10, 2023
San Francisco, California

Filed July 3, 2023

Before:  Richard A. Paez, Richard R. Clifton, and Holly A.
Thomas, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### Tax

The panel reversed the Tax Court's determination that taxpayers Ritchie Stevens and Julie Keene-Stevens owed neither deficiencies nor penalties for 2007 and 2009 through 2012, and remanded for recalculation of the deficiencies and penalties for those years.

Taxpayers did not file returns for 2007 and 2012. The Tax Court concluded that taxpayers owed no deficiencies or penalties for those years, because the partnership losses claimed for those years exceeded the IRS's adjusted non-partnership deficiencies. The panel held that the unsigned, unfiled tax returns, on which the partnership losses were reported, were legally invalid because they had not been filed and executed under penalty of perjury, and therefore could not be used to offset non-partnership income in an individual deficiency proceeding. Accordingly, the panel reversed the Tax Court's deficiency determinations for these years, and remanded with instructions to determine taxpayers' deficiencies without regard to any partnership losses claimed on the legally invalid tax returns.

For 2009 through 2011, taxpayers reported no tax liability because of large net operating losses (NOLs) from partnerships subject to the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA). The Tax Court determined that taxpayers owed no deficiencies or penalties for 2009 through 2011 because the adjustments to non-

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

partnership items would not have resulted in a deficiency even if there were no net loss from partnership items. The panel concluded that the Tax Court erred when it excluded from its calculations of "net loss from partnership items" the portions of the net-operating-loss carryover deductions that were composed of eligible partnership losses in prior years. The panel explained that, when carried forward as deductions, net operating losses composed of partnership losses can offset a taxpayer's non-partnership income or instead are part of the "net loss from partnership items" under Internal Revenue Code § 6234(a)(3), as it was then in effect. The panel remanded for the Tax Court to assess the non-partnership items in the recomputed deficiencies for those years, accounting for the TEFRA-eligible partnership components of the net-operating-loss deductions only in the § 6234(a)(3) calculations of "net loss from partnership items."

## COUNSEL

Jacob E. Christensen (argued) and Francesco Ugolini, Attorneys, Tax Division; David A. Hubbert, Deputy Assistant Attorney General; United States Department of Justice; Washington, D.C.; William J. Wilkins, Chief Counsel; Internal Revenue Service; Washington, D.C.; for Respondent-Appellant.

A. Lavar Taylor (argued), Taylor Nelson Amitrano LLP, Santa Ana, California; Fritz Firman, Weber Firman, Costa Mesa, California; for Petitioners-Appellees.

## OPINION

CLIFTON, Circuit Judge:

This dispute arises from the Tax Court's determination that Ritchie N. Stevens and Julie A. Keene-Stevens (Taxpayers)[1] owed neither deficiencies nor penalties for taxable years 2007 and 2009 through 2012 as a result of large, alleged partnership losses. We must decide first whether such partnership losses claimed on unfiled, unsigned tax returns can be used to offset non-partnership income in an individual deficiency proceeding. What complicates matters here is that the normal process by which partnership losses are separately adjudicated assumes the existence of valid tax returns. We conclude that unsigned, unfiled tax returns are legally ineffective and that the alleged partnership losses they report cannot be used to offset non-partnership income. For taxable years 2007 and 2012, therefore, the Tax Court erred by accepting in these individual deficiency proceedings the partnership losses that Taxpayers claimed on unsigned, unfiled tax forms. The partnership losses that the Tax Court accepted offset Taxpayers' income, which, according to the Tax Court, resulted in no deficiency.

Second, we must decide whether, when carried forward as deductions, net operating losses (NOLs) composed of partnership losses can offset a taxpayer's non-partnership income or instead are part of the "net loss from partnership

---

[1] The Tax Court's decision spells the second taxpayer's name as Julie A. Keen-Stevens, but her brief spells her name as Julie A. Keene-Stevens.

items" under Internal Revenue Code (I.R.C.) § 6234(a)(3),[2] as it was then in effect. As we explain, we conclude that to the extent they are composed of eligible partnership losses, NOLs are partnership items that should be part of the calculation of net loss from partnership items. For taxable years 2009 through 2011, therefore, the Tax Court erred by excluding eligible partnership losses within Taxpayers' NOL carryover deductions from its calculations of "net loss from partnership items." Because the Tax Court instead included those NOLs in its calculations of Taxpayers' *non*-partnership income tax liability, it determined that Taxpayers did not owe deficiencies.

We thus reverse the Tax Court's conclusion that Taxpayers owed neither deficiencies nor penalties in taxable years 2007 and 2009 through 2012, and we remand for a recalculation of Taxpayers' deficiencies and penalties for those years.

## I. Background

### A. Factual and Procedural History

Taxpayers did not timely file any federal income tax returns from 2006 through 2012. For tax years 2007 and 2012, the Tax Court found that they filed no tax returns at all.[3] The returns they did file for 2008 through 2011 reported no tax liability because of large net operating losses from partnerships subject to the Tax Equity and Fiscal

---

[2] Citations in this opinion are to the versions of the statutes in effect during the years in question.

[3] The finding that the IRS never received a tax return for the year 2007 is not clearly erroneous, despite Taxpayers' assertions below.

Responsibility Act of 1982 (TEFRA).[4] As claimed on Taxpayers' Schedule A and Schedule E forms for taxable years 2007 through 2012,[5] virtually all of the claimed $11,463,228 in losses was attributable to partnerships subject to TEFRA.[6] Most of the losses were reported to have come from one specific partnership—SNJ, Ltd.—which itself never filed any required annual tax returns from 2006 through 2012. *See* I.R.C. § 6031 (requiring partnerships to file information returns); 26 C.F.R. § 1.6031(a)-1 (same).

After an audit, the Internal Revenue Service (IRS) issued notices of federal income tax deficiencies and associated penalties under I.R.C. § 6212 for taxable years 2005 through 2012.[7] Taxpayers timely petitioned the Tax Court to review

---

[4] Pub. L. No. 97-248, 96 Stat. 324 (1982) (*codified as amended at* I.R.C. §§ 6221–6234 *prior to 2015 repeal*). TEFRA was repealed in 2015 by the Bipartisan Budget Act of 2015, Pub. L. No. 114–74, § 1101, 129 Stat. 584, 625 (2015) (codified at I.R.C. §§ 6221–6231, 6233, 6234). Under that law, the treatment of partnership-related tax matters changed effective for taxable years after 2017. TEFRA was in effect during all taxable years at issue in this case.

[5] Forms purporting to represent tax returns on behalf of Taxpayers for 2007 and 2012 were provided during this litigation but were not signed under penalty of perjury nor filed with the IRS.

[6] The Schedule A and E forms report net operating losses and losses from partnerships and S corporations. Here, those forms show that for 2007 through 2012, only $793 in losses was attributable to an S corporation, Concord Sierra Restaurants. Only $38,439 in losses was attributable to RSJS Holdings Limited Partnership, a small partnership not subject to TEFRA. The remainder ($11,423,996) of the claimed $11,463,228 in net operating losses was from TEFRA-partnerships, mostly the SNJ, Ltd. partnership.

[7] The IRS conceded below that Taxpayers did not owe a deficiency for taxable year 2005, and the Tax Court granted a motion for summary

and redetermine the deficiencies and penalties pursuant to I.R.C. § 6213(a).[8] The Tax Court had jurisdiction to redetermine the deficiencies and penalties under I.R.C. §§ 6213(a), 6214(a), and where applicable, to enter declaratory judgments regarding Taxpayers' non-partnership items under I.R.C. § 6234 (as it was then in effect).

Before trying the case, the Tax Court granted the IRS's motion to dismiss for lack of jurisdiction so much of the case as related to partnership items because, as we explain more below, at 7-10, partnership items could not be adjudicated in these individual deficiency proceedings. The Tax Court then ordered the IRS to recompute Taxpayers' deficiencies and penalties reflecting that dismissal.

The Tax Court noted that Taxpayers "presented no evidence challenging the adjustments underlying the deficiencies [the IRS] determined." Instead, Taxpayers argued that the IRS had not timely issued its notices of deficiency, an argument which the Tax Court rejected in an interlocutory order. After the litigation began, Taxpayers also provided unsigned, unfiled individual income tax returns (Forms 1040) for years 2007 and 2012. For its part, the IRS argued that the Tax Court should sustain the recomputed deficiencies, or, where appropriate, issue

_____

judgment that it "lack[ed] jurisdiction to order a refund or credit of any overpayment with respect to . . . [Taxpayers'] 2005 tax liability." Therefore, taxable year 2005 was not at issue in the decision below nor is it at issue in this appeal.

[8] The IRS issued Taxpayers separate notices of deficiency for (1) years 2006, 2008, 2009, and 2010; and (2) 2007, 2011, and 2012. The Tax Court consolidated the cases into one proceeding.

declaratory judgments sustaining the recomputed deficiencies for the non-partnership items.

After a trial, the Tax Court issued a memorandum opinion (1) upholding the IRS' recomputed deficiencies for taxable years 2006 and 2008;[9] (2) concluding that Taxpayers owed no deficiencies or penalties for taxable years 2007 and 2012 because the partnership losses claimed on the unsigned, unfiled tax forms for those years were larger than the IRS' adjusted non-partnership deficiencies; and (3) concluding that Taxpayers owed no deficiencies or penalties for taxable years 2009, 2010, and 2011 because the adjustments to non-partnership items for each of those years would not have resulted in a deficiency even if there were no "net loss from partnership items" under I.R.C. § 6234(a)(3). *See Stevens v. Comm'r*, 120 T.C.M. (CCH) 103 (2020). We will elaborate on the second and third conclusions, including our review of those conclusions, below at 11-20 and 20-28, respectively.

Taxpayers subsequently appealed to this Court, and the IRS cross-appealed. We have jurisdiction under 26 U.S.C. § 7482(a)(1). Taxpayers' appeal was dismissed for failure to prosecute. *See Stevens v. Comm'r*, No. 21-70650, 2022 WL 4234267, at *1 (9th Cir. June 8, 2022). Thus, all that remains before us is the IRS's cross-appeal over the Tax Court's final adjudication that Taxpayers owed neither deficiencies nor penalties for taxable years 2007 and 2009 through 2012.

---

[9] The Tax Court upheld the 2006 recomputed deficiency under I.R.C § 6214 and issued a declaratory judgment upholding the 2008 recomputed deficiency as to the non-partnership items under I.R.C. § 6234(c).

### B.  Legal Framework

We begin with an overview of the relevant statutory and regulatory framework.

If the IRS determines that a taxpayer owes additional tax (i.e., has a "deficiency," *see* I.R.C. § 6211), it issues a "notice of deficiency" giving the taxpayer an opportunity to petition the Tax Court before it assesses the additional tax. *Id*. §§ 6212, 6213. The Tax Court then has jurisdiction to re-determine the correct amount of the deficiency and to determine whether any penalties should be assessed. *Id*. § 6214(a). The IRS generally has only three years after the taxpayer files a return to assess any additional taxes due. *Id*. § 6501(a).

Partnerships are not taxed directly. Instead, partnership gains and losses pass through to the partners, who are liable for their respective shares as reported on their individual tax returns. *Id*. §§ 701–02, 6031. Adjudicating partnership gains and losses in the context of individual deficiency proceedings presents a potential problem, however. Determining whether individual partners owe more or less tax on their share of partnership's gains or losses in individual deficiency proceedings could cause "duplicative proceedings and the potential for inconsistent treatment of partners in the same partnership." *United States v. Woods*, 571 U.S. 31, 38 (2013).

Congress addressed this problem when it enacted TEFRA (which has since been repealed but was effective during the relevant years here).[10] Under TEFRA, the

---

[10] As we have noted, TEFRA was repealed in 2015, and the treatment of partnership-related tax matters changed effective for taxable years after

determination of partnership-related tax matters is addressed in two stages:

> First, the IRS must initiate proceedings *at the partnership level* to adjust "partnership items," those relevant to the partnership as a whole. . . . [Second, o]nce the adjustments to partnership items have become final, the IRS may undertake *further proceedings at the partner level* to make any resulting "computational adjustments" in the tax liability of the individual partners.

*Woods*, 571 U.S. at 39 (emphasis added) (citing I.R.C. §§ 6221, 6231(a)(3), 6231(a)(6)). Partnership items are "any item required to be taken into account for the partnership's taxable year . . . to the extent . . . such item is more appropriately determined at the partnership level than at the partner level."[11] I.R.C. § 6231(a)(3); *see also id.* § 6221 ("tax treatment of any partnership item . . . shall be determined at the partnership level").

In other words, in an individual income tax deficiency case brought under Sections 6213 and 6214—like this case—the Tax Court lacks authority to determine the validity of the taxpayer's claimed, TEFRA-eligible partnership

---

2017. *See* Bipartisan Budget Act of 2015, Pub. L. No. 114–74, 129 Stat. 584 (2015). Again, TEFRA was in effect during all taxable years at issue in this case.

[11] Conversely, non-partnership item "means an item which is (or is treated as) not a partnership item." I.R.C. § 6231(a)(4).

losses;[12] the tax treatment of those claimed partnership losses must first be determined separately at the partnership level under TEFRA. *See id.* § 6221; 26 C.F.R. § 301.6221- 1(a) (explaining that taxpayers may not place partnership items at issue in individual deficiency proceedings).

TEFRA's two-step procedure creates a potential timing problem for the IRS. If a taxpayer claims a partnership loss on an individual return that would offset their non-partnership income—resulting in no tax liability for that individual[13]—the IRS would be unable to determine whether a deficiency existed without first conducting partnership-level proceedings to establish the reported partnership losses' validity. The time needed for those partnership-level proceedings might exceed the three-year period set in the statute of limitations imposed by Section 6501 to assess any resulting tax deficiency.

To solve that problem, Congress included a special declaratory judgment procedure in TEFRA: Section 6234. If Section 6234 applies, instead of issuing a notice of deficiency to the taxpayer, the IRS sends a "notice of adjustment" that reflects its determination of the taxpayer's

---

[12] TEFRA excludes "any partnership having 10 or fewer partners each of whom is an individual (other than a nonresident alien), a C corporation, or an estate of a deceased partner." *See* I.R.C. § 6231(a)(1)(B)(i). When we use the term "eligible" to describe partnership losses throughout this opinion, we mean to refer to losses from those partnerships subject to TEFRA.

[13] This is an "oversheltered return." I.R.C. § 6234(b).

non-partnership items.[14] I.R.C. § 6234(a). The taxpayer can then file a "petition . . . for redetermination of the adjustments" with the Tax Court under I.R.C. § 6234(c).

In such a Section 6234(c) proceeding, the Tax Court may issue a declaratory judgment with respect to all *non*-partnership items that do not need to be adjudicated in TEFRA partnership-level proceedings. *Id*. § 6234(c). That declaratory judgment is then binding in any subsequent computational adjustments to the taxpayer's liability *after* the separate, TEFRA-partnership proceedings, even if the limitations period would have otherwise expired by that time. *Id*. § 6234(g)(1); *see also id*. §§ 6231(a)(6), 6501(a).

Finally, under Section 172(c), an NOL exists when a taxpayer's deductions exceed that taxpayer's gross income in a given year. When that occurs, the taxpayer may claim the NOL as a "carryback" deduction against taxable income for the two preceding years and as a "carryover" or "carryforward" deduction to each of the next twenty years' taxable income until the NOL is fully extinguished. *See id*. § 172.

## II.  Discussion

### A.  *Standard of Review*

"Conclusions of law, including the Tax Court's interpretation of the Internal Revenue Code, are reviewed de novo." *SNJ Ltd. v. Comm'r*, 28 F.4th 936, 941 (9th Cir.

---

[14] If Section 6234 should apply, but the IRS mistakenly determines that normal deficiency procedures apply and sends a notice of deficiency, the Tax Court must treat the notice of deficiency as a "notice of adjustment" under Section 6234 and any Tax Court action filed from that notice as an action brought under Section 6234(c). I.R.C. § 6234(h)(2).

2022) (citation omitted). "We review the Tax Court's factual determinations . . . for clear error." *Id.* (citation omitted).

## B. Taxable Years 2007 and 2012

The Tax Court erred by effectively accepting as accurate partnership losses that were not reported on valid tax returns and thus could not be adjudicated in the required, separate, partnership-level proceedings under TEFRA.

The Tax Court correctly held that for taxable years 2007 and 2012, Section 6234 did not apply. The Tax Court found that Taxpayers filed no signed tax returns in either 2007 or 2012. Section 6234 applies only if "a taxpayer files an oversheltered return for a taxable year." I.R.C. § 6234(a)(1). Because Taxpayers filed no returns—oversheltered or otherwise—in 2007 and 2012, the Tax Court properly concluded that the Section 6234(a)(1) prerequisite was not met for those years.[15]

But the Tax Court erred when it reasoned that for 2007 and 2012, it could not "deny [Taxpayers] a prepayment forum for contesting the adjustment of partnership losses, contrary to Congress' intent in enacting section 6234." The Tax Court acknowledged that partnership losses "reported on a signed and filed return may be more credible than [those] reported on an unsigned return provided to the Commissioner in the course of litigation in that facts stated in the former are attested to under penalties of perjury." And notably, the Tax Court never found that these claimed partnership losses were, in fact, grounded in any economic reality. Nevertheless, without citation to any authority, it held that the "failure to file a 2007 [and 2012] return should

---

[15] Again, the SNJ, Ltd. partnership—to which most of the alleged losses were attributed—also did not file tax returns in 2007 or 2012.

not deprive [Taxpayers] of a prepayment forum for contesting any adjustment of the loss they profess to have been allocated by [the TEFRA partnerships]." "[T]he inapplicability of section 6234," the Tax Court explained, "does not resuscitate" the approach rejected by Section 6234 and exemplified in *Munro v. Commissioner*, 92 T.C. 71 (1989). This reliance on *Munro* and the perceived congressional intent behind Section 6234 was mistaken.

In *Munro*, the IRS issued a notice of deficiency that prospectively disallowed the partnership losses reported by the taxpayers—pending later partnership-level proceedings to adjudicate their legitimacy—and made other adjustments to the taxpayers' reported non-partnership items. *Id.* at 71–72. *Munro* held that the partnership items claimed on the taxpayers' return must be "completely ignored" in determining whether a deficiency existed for the *non*-partnership items. *Id.* at 74. This deprived the taxpayers of a prepayment forum to determine their tax liability; if the partnership losses were later verified, they were left to seek a refund. The IRS and Tax Courts were motivated to take this approach to avoid the IRS being time-barred from seeking payment of deficiencies on non-partnership items if the partnership-level proceedings lasted longer than the three-year statute of limitations. *See* I.R.C. § 6501(a). To solve this problem, Congress enacted Section 6234's declaratory judgment procedure for non-partnership items.

Here, because Taxpayers did not file tax returns and Section 6234's declaratory judgment procedure did not apply, the Tax Court conducted an individual deficiency proceeding pursuant to Section 6214(a). But in that individual deficiency proceeding, the Tax Court effectively accepted as accurate the partnership losses reported on Taxpayers' unsigned, unfiled tax return forms for 2007 and

2012,[16] which resulted in no tax deficiency for both years. The Tax Court should have ignored those unreported partnership losses in assessing Taxpayers' deficiencies.

### 1. No Valid Tax Returns with Legal Effect

To begin, Taxpayers' 2007 and 2012 Forms 1040 were not valid tax returns with legal effect because they were neither filed nor executed under penalty of perjury. *See In re Hatton*, 220 F.3d 1057, 1060–61 (9th Cir. 2000) (defining requirements of a valid tax return); *see also* I.R.C. § 6061(a) ("any return, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary"); *id.* § 6065 (any such form "shall contain or be verified by a written declaration that it is made under the penalties of perjury").

For a tax return to have legal effect, the default rule is that it must be signed and filed under penalty of perjury. *Brown v. United States*, 22 F.4th 1008, 1012 (Fed. Cir. 2022) ("Sections 6061(a) and 6065 thus impose a default rule that individual taxpayers must personally sign and verify their [tax return documents]. Otherwise, the documents are invalid or of no legal effect."); *Selgas v. Comm'r*, 475 F.3d 697, 700–01, 701 n.7 (5th Cir. 2007) ("Even if the returns were filed, the fact that they were unsigned deprives them of legal effect."). While the Secretary of Treasury can adjust that default rule by regulation, she has not done so. *See* 26 C.F.R. §§ 1.6012-1 (explaining rules for individual tax returns, consistent with the default rule); 1.6065-1(a)

---

[16] Here, the partnership losses totaled $6,893,357 and $11,463,228 in 2007 and 2012 respectively. The 2012 partnership losses largely result from a NOL carryforward deduction pursuant to I.R.C. § 172.

(reiterating the statutory rules); *see also Brown*, 22 F.4th at 1013 ("To be sure, § 6061(a) gives the Secretary the authority to prescribe how individual taxpayers may satisfy the statute's requirement. Similarly, § 6065 gives the Secretary discretion to suspend the verification requirement in certain cases. However, these statutes' implementing regulations echo the statutory default rule.").

Because Taxpayers here did not file signed tax returns under penalty of perjury for 2007 and 2012, their 2007 and 2012 tax forms had no legal effect. That is unlike the circumstances in *Munro*. In that case the taxpayers filed valid, legally effective tax returns claiming partnership losses, but the Tax Court "completely ignored" those partnership items reported on signed, valid returns—forcing them to pay up front and ask for a refund later. *Munro*, 92 T.C. at 74.

In overruling *Munro* with Section 6234, Congress explained that the IRS and Tax Courts must "assum[e] that all TEFRA items whose treatment has not been finally determined [in separate partnership proceedings] had been *correctly reported on the taxpayer's return*." H.R. Rep. 105-148, at 586 (1997) (emphasis added). The Committee Report specifically noted that Section 6234 was intended to create a "special rule to address the factual situation presented in *Munro*." *Id*.

We do not share the Tax Court's concern that denying these Taxpayers "a prepayment forum for contesting the adjustment of partnership losses [would be] contrary to Congress' intent in enacting section 6234." The taxpayers in *Munro* had filed a tax return. 92 T.C. at 71. Taxpayers in this case did not file any returns in 2007 or 2012. As a result, they are not factually similar to the taxpayers in *Munro*, who

played by the rules. We see nothing contrary to the intent of Congress in denying the benefit of Section 6234 to a taxpayer who never filed a return and thus failed to provide the Tax Court with any "correctly reported" partnership losses upon which that court could base its calculations. *Cf.* H.R. Rep. 105-148, at 586 (1997).

### 2. No Mechanism for the Tax Court to Assess Partnership Losses on Invalid Tax Returns

As we have explained, the proceeding before the Tax Court was an individual deficiency proceeding under Section 6214(a). The Tax Court erred by accepting as accurate Taxpayers' TEFRA-eligible claimed partnership losses because it had no jurisdiction in these proceedings to evaluate those losses at all. What's more, the TEFRA rules and statutes provide no process to evaluate partnership losses claimed on invalid tax returns.

The deficiency statutes applicable here provide that "[i]n determining the amount of any deficiency for the purposes of [income tax deficiency procedures], adjustments to partnership-related items shall be made *only as provided in [the TEFRA partnership provisions]*." I.R.C. § 6211(c) (emphasis added). And under TEFRA, "the tax treatment of any partnership item . . . shall be *determined at the partnership level*." *Id*. § 6221 (emphasis added). Indeed, the TEFRA regulation forbids a taxpayer in a "proceeding relating to nonpartnership items"—like the Section 6214 proceeding before the Tax Court here—from "offset[ting] a potential increase in taxable income based on changes to *non*partnership items by a potential decrease based on *partnership* items." 26 C.F.R. § 301.6221-1(a) (emphasis added). This is exactly what Taxpayers sought to do, and what the Tax Court countenanced. The claimed partnership

losses should have been evaluated in separate, TEFRA proceedings.

But there is a wrinkle in the TEFRA regulations. Those regulations provide that "treatment of partnership items *on the partner's return* may not be changed except as provided in [TEFRA] and the regulations thereunder." *Id*. (emphasis added). Thus, absent a valid tax return that reported partnership items, the TEFRA statutes and regulations do not provide for the required partnership-level proceedings. Taxpayers here appear to slip between TEFRA's cracks, but if so, it should not work to their advantage. They claimed TEFRA-eligible partnership losses—which the Tax Court could not adjudicate in individual proceedings. But they claimed those losses on unfiled, invalid tax forms—which could not trigger either the separate, partnership-level proceedings or Section 6234's declaratory judgment procedure for the non-partnership items.

That does not mean that Taxpayers are entirely without recourse. For example, if Taxpayers were to provide tax returns that were signed under penalty of perjury, even if late, they could seek a refund after the TEFRA-partnership proceedings concluded, just like the taxpayers in *Munro*. *See* 92 T.C. at 74. But unlike the *Munro* taxpayers, the Taxpayers in our case did not file any valid tax returns for these two years. No TEFRA-eligible partnership items existed for Taxpayers in taxable years 2007 or 2012 for the IRS or Tax Court to consider in a pre-payment context.[17]

---

[17] Taxpayers' assertion that their unreported partnership losses were simply amendments to their pleadings under I.R.C. Rule 41(b) to which the IRS effectively consented is unsuccessful. Taxpayers could not assert

### 3.  Negative Incentives of the Tax Court's Approach

We do not lightly reject the Tax Court's analysis, but our interpretation of the applicable statutes is bolstered by the perverse incentives inherent in the Tax Court's approach. That approach undermines Section 6234's threshold requirement that taxpayers file tax returns to get its prepayment protections. *See* I.R.C. § 6234(a)(1). Instead, the Tax Court could incentivize a failure to file tax returns in the hope that, as here, purported partnership losses would be accepted in a deficiency proceeding and that the IRS might be precluded from relitigating the taxes owed, even if the partnership losses were later disallowed. Suppose a judgment was entered following a proceeding against an individual taxpayer, and that taxpayer's alleged partnership losses were later disallowed in partnership-level proceedings. The concern of the IRS is that any subsequent action would be a further claim between the same two parties—the IRS and the taxpayer—about the same cause of action— a possible tax deficiency in the given year. That could trigger an assertion of claim preclusion or res judicata based on the first proceeding. *See, e.g.*, *Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948) ("[I]f a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year."). The parties argued this question to us, but we need not and do not resolve it here. The point is that the approach taken by the Tax Court here opens the door to arguments that

---

unreported partnership losses for the first time in this individual deficiency proceeding because those losses effectively did not occur— as they were not reported on valid tax returns, there was no mechanism for them to be adjudicated in accordance with TEFRA.

should not have to be faced, and that, indeed, Congress has precluded by requiring the submission of partnership losses on valid returns.

In sum, the Tax Court correctly held that Section 6234 did not apply to taxable years 2007 and 2012, but it erred in using the partnership losses claimed on the invalid tax returns to hold that Taxpayers had no income tax deficiencies for those years. Those purported losses were not reported on valid tax returns. They could not be adjudicated in Taxpayers' individual Tax Court proceedings. Neither could they be adjudicated—nor were they adjudicated—in required partnership-level proceedings. We reverse the Tax Court's holding that there were no deficiencies in 2007 and 2012 and remand with instructions for the Tax Court to determine Taxpayers' 2007 and 2012 deficiencies (and any applicable penalties and additions-to-tax)[18] disregarding entirely the alleged partnership losses in those years.

### C. Taxable Years 2009, 2010, and 2011

We conclude that the Tax Court erred when it excluded from its calculations of "net loss from partnership items," *see* I.R.C. § 6234(a)(3), in 2009, 2010, and 2011 the portions of the NOL carryover deductions that were composed of eligible partnership losses in prior years.

---

[18] Because it determined that Taxpayers owed no deficiencies in 2007 and 2012, the Tax Court rejected the penalties and additions-to-tax that the IRS assessed. On remand, the Tax Court must reevaluate whether Taxpayers owe any failure-to-file or failure-to-pay penalties or additions-to-tax for taxable years 2007 and 2012 pursuant to I.R.C. §§ 6651 and 6654.

The Tax Court held that Taxpayers owed no deficiency to the IRS for taxable years 2009, 2010, and 2011.[19]. For those years, the Tax Court applied Taxpayers' NOL carryover deductions to its calculations of Taxpayers' non-partnership tax liability. Because those NOL carryover deductions were so large, they offset any non-partnership income, resulting in the conclusion that there were no deficiencies. *See* I.R.C. § 172.

The Tax Court then determined that the declaratory judgment provisions of Section 6234(c) were inapplicable because Taxpayers' tax returns in those years failed to satisfy Section 6234(a)(3): that the IRS' adjustments to the non-partnership items in the return "do not give rise to a deficiency . . . but would give rise to a deficiency if there were no net loss from partnership items." I.R.C. § 6234(a)(3). In other words, the Tax Court held that even without the net partnership losses that Taxpayers claimed on their 2009, 2010, and 2011 returns,[20] their adjusted taxable income was not enough to create a deficiency.

---

[19] Because it determined that Taxpayers owed no deficiencies in 2008 through 2011, the Tax Court also rejected for taxable year 2010 the addition-to-tax and accuracy related penalties that the IRS assessed under I.R.C. §§ 6651(a)(1) and 6662(a). The Tax Court rejected for taxable year 2011 the addition-to-tax that the IRS assessed under I.R.C. § 6651(a)(1), but the IRS conceded the 2011 penalties it assessed pursuant to I.R.C. §§ 6651(a)(2) and 6654. Thus, on remand, the Tax Court must redetermine whether Taxpayers owe any penalties or additions-to-tax under I.R.C. §§ 6651(a)(1) and 6662 for taxable years 2010 and 2011.

[20] For 2011, the Tax Court did not determine the value of the net loss from partnership items, though it clearly excluded the NOL deductions from its analysis. Thus, on remand, the Tax Court must conduct the Section 6234(a)(3) analysis for taxable year 2011 in the first instance.

In calculating the net losses from partnerships, the Tax Court did not include any of Taxpayers' claimed NOL carryover deductions, even though these deductions were composed primarily of partnership losses from prior years. The government contends that the Tax Court should have accounted for the large, alleged partnership losses underlying the NOL carryforward deductions when determining the "net loss from partnership items" under Section 6234(a)(3).

We agree. A carryforward NOL should be included in the "net loss from partnership items" under Section 6234(a)(3) to the extent that the NOL is made up of losses from TEFRA partnerships carried over from prior years. A TEFRA partnership loss allocated to a partner in a given year is a "partnership item." *See* 26 C.F.R. § 301.6231(a)(3)-1(a)(1)(i). Such a partnership item does not lose its character as a partnership item when carried over as an NOL deduction into a subsequent tax year.

Taxpayers respond that the definition of a "partnership item" as "any item required to be taken into account for the partnership's taxable year," I.R.C. § 6231(a)(3), limits partnership items to those losses (or gains) sustained by the partnership in *that* taxable year. But Taxpayers insert a time limit that is not found in the statute. "The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (internal quotation and citation omitted). Contrary to Taxpayers' claim, nothing in the text of the statute indicates the year in which the partnership must take the partnership item into account.

Indeed, Section 6234(a)(3)'s plain language includes carryover NOLs from prior years. We "determine if a statute's meaning is plain or ambiguous by looking to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Connell v. Lima Corp.*, 988 F.3d 1089, 1097 (9th Cir. 2021) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Section 6234(a) provides:

> (a) General rule.—If—
>> (1) a taxpayer files an oversheltered return *for a taxable year*,
>> (2) the Secretary makes a determination with respect to the treatment of items (other than partnership items) of such taxpayer *for such taxable year*, and
>> (3) the adjustments resulting from such determination do not give rise to a deficiency (as defined in section 6211) but would give rise to a deficiency if there were no net loss from partnership items,
>
> the Secretary is authorized to send a notice of adjustment reflecting such determination to the taxpayer by certified or registered mail.

I.R.C. § 6234(a) (emphasis added). Unlike subsections (a)(1) and (a)(2), subsection (a)(3) does not include any qualifier that the "net loss from partnership items" occur in a specific taxable year. This difference between the subsections plainly suggests that eligible carryforward net operating losses should be considered part of the "net loss from partnership items."

Even if the text of the statute were ambiguous—which it is not—we must identify the interpretation that is "'more consistent with the broader context' and 'primary purpose' of the statute." *Connell*, 988 F.3d at 1097 (quoting *Robinson*, 519 U.S. at 345–46). Congress enacted Section 6234(c) largely to avoid the IRS being time-barred for non-partnership deficiency proceedings. *See* H.R. Rep. 105-148, at 585; I.R.C. § 6501(a).

With Section 6234's declaratory judgment procedure, however, "[i]f the taxpayer's partnership items were then adjusted [and disallowed] in a subsequent proceeding, the IRS has preserved its ability to collect tax on any increased deficiency attributable to the nonpartnership items," H.R. Rep. 105-148, at 587—notwithstanding the otherwise-applicable statute of limitations. Even the Tax Court acknowledged that accepting Taxpayers' arguments might permit the statute of limitations to bar the IRS from assessing tax "that would result from the adjustments of nonpartnership items taken into account in the [2009, 2010, and 2011 notices of deficiency]."[21] Thus, the interpretation of Section 6234(a)(3) that includes NOLs in the calculation (to the extent the NOL contains TEFRA partnership losses) is most consistent with the broader context and primary purpose of the law.

Finally, the Tax Court's inconsistent treatment of the NOL carryforward deductions as "affected items" demonstrates that the deductions should have been included in the Section 6234(a)(3) calculation of "net loss from

---

[21] Again, any additional tax due on the partnership items themselves would still be available for the IRS to pursue. *See* I.R.C. § 6230(a) (repealed 2015).

partnerships."**22** The Tax Court repeatedly referred to the NOL deductions as "affected items," comprised mostly of TEFRA "partnership item components," while also ignoring those NOL partnership item components in its Section 6234(a)(3) calculations. Taxpayers argue that because a net operating loss carryover is an "affected item" it definitionally cannot be a "partnership item" to be included in the calculation of "net loss from partnership items." But that is beside the point. The phrase "net loss from partnership items" includes *only* that portion of the NOLs consisting of partnership losses carried over from prior tax years, which remain "partnership items." We see no inconsistency in recognizing that the whole NOL is an affected item because of its component partnership items.

Applying these principles to the values provided on Taxpayers' returns here, if the proportion of the carryforward NOL deductions attributable to partnership losses were included in the Tax Court's arithmetic in taxable years 2009 and 2010, then Taxpayers would have had a tax deficiency but for the "net loss from partnership items"— satisfying Section 6234(a)(3) in those years.

---

22 An "affected item" is "any item to the extent such item is affected by a partnership item," I.R.C. § 6231(a)(5) (repealed 2015), and the tax code "require[s] partner level determinations" to be completed *before* the Tax Court examines the individual tax treatment of an "affected item." *Id*. § 6234(c); *see also Adkison v. Comm'r*, 592 F.3d 1050, 1053 (9th Cir. 2010) ("In general, a partnership proceeding must be completed and a valid notice of deficiency sent before the Tax Court may examine the individual tax treatment of an affected item.").

For 2009, the Taxpayers reported *negative* taxable income of $10,223,895.[23] The IRS' adjustments to Taxpayers' non-partnership income increased their taxable income by $5,981. The Tax Court determined that Taxpayers' net loss from partnership items was only $990,360. However, Taxpayers claimed a $9,766,818 NOL carryforward deduction that year, almost all of which, $9,752,075, was attributable to purported TEFRA-partnership losses carried forward from 2007 and 2008.[24] The true "net loss from partnership items" under Section 6234(a)(3) that Taxpayers claimed, therefore, was $10,742,435—the $990,360 that the Tax Court originally included plus the eligible partnership NOLs that it failed to include. If the net loss from eligible partnership items is removed from Taxpayers' adjusted gross income, Taxpayers would have had a *positive* taxable income of $524,521 for 2009,[25] satisfying Section 6234(a)(3).

The Tax Court's arithmetic is similar for 2010. There, the Taxpayers reported a *negative* taxable income of $10,814,841.[26] The IRS' adjustments to Taxpayers' non-partnership income increased their taxable income by $729,079. The Tax Court determined that Taxpayers' net loss from partnership items was only $109,569. However,

---

[23] This figure accounts for the adjusted gross income reduced by itemized deductions and exemptions claimed on Taxpayers' 2009 return.

[24] The $14,743 remainder was a loss from RSJS Holdings, a small partnership not subject to TEFRA.

[25] This value is obtained from the sum of $5,981 (adjustment to non-partnership items) + $10,742,435 (net loss from partnership items) – $10,223,895 (adjusted gross income).

[26] This figure accounts for the adjusted gross income reduced by itemized deductions and exemptions claimed on Taxpayers' 2009 return.

Taxpayers claimed a $10,188,499 NOL carryforward deduction that year, of which $10,170,250 was attributable to purported TEFRA partnership losses carried forward from 2007, 2008, and 2009.[27] The true "net loss from partnership items" that Taxpayers claimed, therefore, was $10,279,819—the $109,569 that the Tax Court originally included plus the eligible partnership NOLs that it failed to include. Thus, if the net loss from eligible partnership items is removed from Taxpayers' adjusted gross income, Taxpayers would have had a *positive* taxable income of $194,057,[28] again satisfying Section 6234(a)(3).

We do not conduct this analysis for taxable year 2011, though the same result—that Section 6234(a)(3) is satisfied—seems likely. Unlike for 2009 and 2010, the Tax Court did not determine the 2011 value of the net loss from partnership items, though it clearly excluded the alleged TEFRA-partnership losses underlying the claimed $10,750,110 NOL deductions when it determined Section 6234(a)(3) did not apply. On remand, the Tax Court must conduct the Section 6234(a)(3) analysis for taxable year 2011 in the first instance, including by calculating how much of the claimed $10,750,110 NOL carryforward deduction on Taxpayers' 2011 tax returns consists of eligible partnership losses that should factor into the "net loss from partnership items" under Section 6234(a)(3).

Because for 2009, 2010, and 2011 the Tax Court should have included the portion of the NOL carryforward

---

[27] The $18,249 remainder was again the sum of losses reported from RSJS Holdings, a small partnership not subject to TEFRA.

[28] This value is obtained from the sum of $729,079 (adjustment to non-partnership items) + $10,279,819 (net loss from partnership items) – $10,814,841 (adjusted gross income).

deductions composed of prior-year partnership losses in its calculation of "net operating loss from partnership items," we (1) reverse the Tax Court's holding that it lacked jurisdiction under Section 6234(a)(3) for the 2009, 2010, and 2011 returns; and (2) remand for the Tax Court to issue declaratory judgments pursuant to Section 6234 regarding the non-partnership items in the recalculated deficiencies for those years, this time accounting for the TEFRA-partnership-loss components of the NOL deductions in its Section 6234(a)(3) calculations.

## III.  Conclusion

The Tax Court erred in holding that Taxpayers owed neither deficiencies nor penalties for taxable years 2007 and 2009 through 2012. Consistent with the foregoing analysis, we (1) reverse the Tax Court's deficiency determinations for taxable years 2007 and 2012 and remand with instructions to determine Taxpayers' deficiencies without regard to any partnership losses claimed on invalid, legally ineffective tax returns; and (2) reverse the Tax Court's determination that it lacked jurisdiction to enter declaratory judgments under I.R.C. §§ 6234(a)(3), (c) for taxable years 2009 through 2011 and remand for it to assess the non-partnership items in the Taxpayers' 2009, 2010, and 2011 recomputed deficiencies, accounting for the TEFRA-eligible partnership components of the NOL deductions only in the Section 6234(a)(3) calculations of "net loss from partnership items." We also remand for the Tax Court to recalculate any penalties or additions-to-tax that Taxpayers owe for taxable years 2007 and 2009 through 2012 pursuant to I.R.C. §§ 6651, 6654, and 6662.

**REVERSED** and **REMANDED**.